OPINION. Aeundell, Judge: The petitioner seeks a worthless debt deduction for 1943 for a secured debt incurred by a corporation that became insolvent and went out of business in 1930. The debt was incurred on January 2,1929, by a corporation referred to herein as Dutee. The amount of the debt was $850,000 evidenced by a demand note and secured by shares of stock valued at $1,076,367.63 at the time the debt was incurred. In 1930, Dutee became insolvent and wound up its affairs without having made any payments on the principal or interest of the note. The existence of Dutee was terminated in accordance with the laws of the State of Rhode Island in 1933.[1] In 1943, the petitioner entered in an investments account appearing on its books the remaining shares of stock which it had received as security in 1929, and claimed a worthless debt deduction for the year 1943. Section 23 (k) (1) of the Internal Revenue Code provides that “In computing net income there shall be allowed as deductions: * * * Debts which become worthless within the taxable year; * * The petitioner contends that a secured debt does not “become worthless” within the meaning of section 23 (k) (1) until the property securing it is disposed of even though the debtor went out of existence in a state of hopeless insolvency and the value of the security is considerably less than the debt. In support of its contention, the petitioner relies on Old Colony Trust Associates v. Eassett, 150 F. 2d 179; Frank A. Spencer, 21 B. T. A. 859; John H. Wood Co., 46 B. T. A. 895; Kessler Oil & Gas Co., 41 B. T. A. 31; Robert LeRoy, 4 T. C. 70, affirmed on another issue, 152 F. 2d 936; Regulations 111, section 29.23 (k)-3. However, there is implicit in these cases as an essential condition to the rule they support the requirement that the taxpayer creditor has not acquired ownership of the security or dealt with it as his own property prior to the year for which the deduction is claimed. A taxpayer cannot assert dominion as an owner and at the same time regard the property as collateral for tax purposes. In Old Colony Trust Associates v. Hassett, supra, the court pointed out that,the taxpayer creditor therein could not acquire ownership of the pledged property without foreclosure by public sale; that there was an existing corporation which possessed the right of redemption; and that the conduct of the taxpayer creditor indicated the lack of ownership of the pledged property. In the instant case, the taxpayer creditor could acquire ownership of the pledged property with a minimum of formality;[2] the taxpayer could not identify any person as the holder of the right of redemption;[3] and the taxpayer conducted himself as owner of the property. The petitioner’s assertion of dominion over the property is evident from its procedure in dealing with the dividends and the proceeds from the sale of the stock. In 1932, the shares of stock were transferred to and registered in the name of a nominee of the petitioner and thereafter all dividends were paid directly to the petitioner or its nominee. The dividends were retained by the petitioner as its own property. The petitioner contends they were applied against the interest on the note and refers us to entries in its books of account to substantiate the contention. However, no permission to make this application was sought or obtained by the petitioner nor was any notice given or any accounting of the application made to anyone. The petitioner sold the shares in whatever quantities and at whatever time it desired without consulting anyone. The nominee disposed of the securities whenever ordered to by the petitioner and looked to no one else for instructions. Similarly, as in the case of the dividends, the petitioner contends the proceeds were applied to the principal of the note as evidenced by bookkeeping entries. However, the petitioner did not seek or obtain permission to sell the securities nor was any notice given or any accounting of the application made to anyone. The petitioner conceded that this was not its customary practice. At the end of each year, the petitioner, like most institutional fiduciaries, sent to the owners of the property it held in a fiduciary capacity a statement indicating the dividends received, the proceeds from sales and other information needed by the owners in preparing their income tax returns. A summary of the facts discloses that the debtor went out of existence in a state of hopeless insolvency in 1930; the payment of principal and interest was always in default; the ownership of the collateral could be acquired by the creditor with a minimum of formality, and there was no person identified as the holder of the right of redemption; and since 1932 the title to the securities had been held in the name of petitioner’s nominee over whom it had complete control. Since 1932, the petitioner had assumed dominion and control over the dividends from the securities and the proceeds from their sale. Taking into consideration all of these factors and circumstances, it is our considered judgment that the petitioner was the owner of the securities, and this ownership had been acquired long prior to 1943. Certainly if the petitioner’s conduct under these circumstances was not sufficient to convey to it the title of ownership of the shares of stock, then its unilateral act in making entries on its own books of account in 1943 was not sufficient for that purpose. Section 23 (k) (1) as presently worded is designed to allow deductions for worthless debts in the year the worthlessness occurs. The time for deducting the worthless debt is not to be postponed to a year when for tax purposes it may better suit the interests of a taxpayer. Those cases holding that a taxpayer with a secured debt need not take a deduction for worthlessness until the security is disposed of do not detract from the intent of section 23 (k) (1). They merely recognize that a subsisting debt that is secured is not completely worthless as long as the creditor retains the security as pledged property and deals with it as such without ever asserting dominion as owner or conducting himself in a manner inconsistent with his fiduciary status as pledgee. Old Colony Trust Associates v. Hassett, sufra; Franh A. Spencer, sufra; John H. Wood Co., sufra; Kessler Oil & Gas Co., sufra; Robert LeRoy, sufra; Regulations 111, section 29.23 (k)-3. For these reasons, we are of the view that the petitioner acquired ownership prior to 1943 and, therefore, the debt became worthless prior to that year even undei the rule of law urged by the petitioner. Since the debt did not become worthless in 1943, the worthless debt deduction is not allowable for that year. Section 23 (k) (1) of the Code. Decision will be entered under Rule 50. Rhode Island General Laws of 1938, chapter 116, article 2, section 63, provides that: Every corporation whose corporate existence expires by any limitation or is terminated by dissolution or otherwise shall nevertheless be continued as a body corporate for 3 years after the date of such expiration or termination for the purpose of prosecuting and defending actions, suits or proceedings by or against it, and of enabling it to settle and close its affairs, to dispose of its property and to distribute its assets, but not for the purpose of continuing the business for which it was established : Provided, however, that no action, suit or proceeding begun by or against any such corporation before the expiration of said 3 years shall abate because of the termination of said period. See also Rhode Island General Laws of 1923, title XXIV, chapter 248, section 63. The contract between the petitioner and its debtor, Dutee, provided that the holder of the note could sell the collateral “without notice, either at public or private sale or otherwise” on nonperformance of the promise. The contract further provided that upon the failure to deposit, when necessary, additional collateral so that the market value of the pledged security would always be at least 20 per cent more than the amount of the note, the note would be deemed payable forthwith and the holder could reimburse himself by the sale of the securities, and the holder could “purchase at any such sale discharged from any right of redemption.” Since the latter part of 1929, the interest on the note was in default, the debtor made no payment on the principal, and the market value of the pledged security was considerably less than 120 per cent of the amount of the note. In short, since 1929, the petitioner was by the very terms of the contract authorized to acquire the ownership of the pledged securities with a minimum of formality. It is unlikely that such a right could have been distributed to the shareholders of Dutee since the corporation was liquidated in a state of insolvency and there is no evidence that it was distributed to any creditor except perhaps the petitioner. At the time of the liquidation and dissolution of Dutee, the value of the pledged property was considerably less than the amount of the indebtedness it secured.